SCOTT *v.* CRUSE,

PATENTS; DILIGENCE.

Where the junior party to an interference, having conceived the invention of the issue more than a year prior to the filing date of the senior party,

who is confined to that date for his date of conception, is shown to have exercised reasonable diligence in perfecting and prosecuting the invention from that time until he files his application, he is entitled to an award of priority.

No. 604. Patent Appeals.   Submitted January 12, 1910.   Decided February 1, 1910.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Fenelon B. Brock* for the appellant.

*Mr. James Q. Rice* and *Mr. M. B. Philipp* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding involving priority of the invention described in the following issue:

"1. In a casting box the combination with a part maintained in a substantially vertical position, of a movable part having supporting devices, and a guide comprising tracks with which said supporting devices co-operate, the movable part moving from a substantially vertical position, the supporting devices and guide being constructed and arranged so that the movable part is balanced for any position thereof.

"2. In a casting box, the combination with a part maintained in a substantially vertical position, of a movable part having two sets of supporting devices thereon, and a guide comprising two sets of tracks with which said devices co-operate, the movable part moving from a substantially horizontal to a substantially vertical position, the supporting devices and guide being constructed and arranged so that the movable part is balanced for every position thereof.

"3. In a casting box, the combination with a cover maintained

in a substantially vertical position, of a movable body said body having two sets of supporting devices thereon, one set being arranged near the bottom thereof, and a guide with which said supporting devices co-operate, the supporting devices and guide being constructed and arranged so that the movable body is balanced for every position thereof."

The invention is an improved mold for casting stereotype plates for use in printing machines. It consists of a cover fixed in a vertical position, and a body movable on tracks from a horizontal to a vertical position into conjunction with the cover, the tracks being so formed that the movable body shall be in equilibrium at all points of its movement. After the movable body is thus brought to a vertical position, it is brought into contact with the stationary cover, and locked thereto for the reception of the molten metal. Although the immovable vertical cover is a part of the combination of the issue, the gist of the invention is the mechanical movement, consisting of the specially designed tracks, by means of which the movable part of the mold is moved from its horizontal to a vertical position and equally balanced at all intermediate positions. When the two parts of the mold are brought into contact they are necessarily clamped or locked to affect the casting, but the locking device forms no part of the issue.

Walter Scott, who is now represented by his executors, Isabella and David J. Scott, filed his application on September 15, 1903. He has alleged conception and disclosure on April 8, 1901, but claims no reduction to practice save that effected by the filing of his application. He has taken no testimony to prove an earlier conception, and is confined, therefore, to his application date. Amandus H. Cruse, who filed January 6, 1904, alleges conception in the early part of July 1902, making drawings August 15, construction of models September 16, and reduction to practice about December 1, 1902. The Examiner of Interferences found that Cruse conceived the invention in September, 1902, but had not reduced it to actual practice, before Scott filed. He awarded priority to Cruse, however, on the ground that he exercised due diligence in perfecting his

machine and reducing to practice. On appeal to the Examiners-in-Chief, two of them concurred in a decision reversing the Examiner of Interferences. They held that, while Cruse had made his machine about December 1, 1902, he had neither reduced it to practice before Scott filed, nor exercised diligence. One of them dissented on the ground that the invention consisted of a mechanical movement, the construction of which in operative form was a reduction to practice. The Commissioner, without passing upon the fact of reduction to practice, reversed the Examiners-in-Chief, and awarded priority to Cruse, on the ground that he exercised due diligence in perfecting and prosecuting his invention.

The evidence and the several propositions thereunder relating to reduction to practice and diligence have been discussed at length and with ability in the several decisions of the tribunals of the Patent Office.

The decisions render it unnecessary to review the evidence further. It is very clear that Cruse conceived the invention in the summer of 1902. We are inclined to the view that he actually reduced it to practice as a satisfactory casting mold for the desired plates, certainly as early as the summer of 1903, by the use in the office of the New York Herald, but we need not decide that question. Passing it by, we agree with the Commissioner that the evidence shows that Cruse, having conceived the invention in the summer of 1902, exercised reasonable diligence in perfecting and prosecuting it from that time until he filed his application for the patent. The evidence brings him clearly within the rule of diligence established by the cases cited in the decisions of the Examiner of Interferences and the Commissioner.

The decision is affirmed, and this decision will be certified to the Commissioner of Patents as the law requires.

*Affirmed.*